# Commonweath *v.* Allen et al., Appellants.

### [Marked to be reported.]

*Criminal law—Obstruction of highways—Nuisance—Indictable offence.*

At common law any obstruction which unnecessarily incommodes or impedes the lawful use of a highway by the public is a nuisance and indictable as such.

A man may lawfully use a public highway in the transaction of his legitimate business, either for travel or for transportation, but such use must be reasonable, and the question of its reasonableness is to be determined by the jury.

*Traction engine—Use of steam on highways—Act of June 30, 1885.*

The running of a traction engine over a public highway upon a single occasion would not constitute a public nuisance, as it might be necessary in order to remove it from one location to another.

This necessity is recognized by the act of June 30, 1885, P. L. 251. This act was restrictive legislation. It was not intended to license the unrestricted use of steam upon the public highways of the commonwealth.

Defendants operated a stone quarry from which they had been in the habit of hauling stone in the ordinary manner by horses. They procured a traction engine, by means of which they began hauling stone in two wagons, making a train from fifty to fifty-five feet long, which weighed when loaded from thirteen to fourteen tons, with which they made two trips daily from their quarry to the railroad station, a distance of about three miles. There was evidence that the train by its noise and appearance interfered with travel over the road by frightening horses, and that it obstructed travel.

*Held,* That such use of the highway constituted a nuisance and the maintenance of it an indictable offence.

*Highways and bridges—Duties of township—Extraordinary use—Unusual loads.*

Highways and bridges are constructed for ordinary use in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed or by the passing of a very large and unusual weight. A township is not bound to do more than to so construct its bridges as to protect the public safety against injury by a reasonable, proper and probable use thereof, in view of the surrounding circumstances, such as the extent, kind and nature of the travel and business over them.

Argued March 17, 1892. Appeal, No. 297, Jan. T., 1892, by defendants, Charles A. Allen et al., from judgment of Q. S. Bradford Co., Sept. Sess., 1891, No. 63, on verdict of guilty. Before Paxson, C. J., Sterrett, Williams, McCollum and Heydrick, JJ.

Indictment for maintaining a public nuisance.

The facts appear by the opinion of the Supreme Court.

The indictment was in two counts. The first is set out in the opinion of the Supreme Court; the second charged defendants in substance with drawing great and unusual loads over the highway, by which damage was done to the roadway and bridges thereon, thereby endangering the safety and lives of the people using said highway.

Defendants moved to quash the indictment. Overruled. [1]

At the trial before Peck, P. J., the commonwealth submitted the following points, among others:

"5. That the carrying of an unreasonable weight on a highway and over its bridges, thus endangering their safety, and wearing them out in very much less time than would be the case with the ordinary and reasonable use thereof, is a nuisance. And if the jury believe the defendants so did, they must find them guilty of at least the second count in the indictment. *Answer :* We affirm this proposition with the same qualification that we made as to the fourth point, namely,—if such use renders the roads or bridges dangerous or unsafe for public travel. [3]

"6. That even if the jury believe the defendants had a right to run their traction engine over the public highway, but by their frequent and constant use of the same several times a day they prevented the public from their enjoyment of its use, then the defendants are guilty of maintaining a nuisance, and must be found guilty. *Answer :* We affirm this proposition. [4]"

The defendants submitted the following points, among others:

"4. If the jury believe from all the evidence in the case that the defendants in running the traction engine over the highway, from Allen's quarry to the station at Rummerfield, for the purpose of traffic, ran and managed the same properly, using such precautions as required by the act of assembly, for the safety of the traveling public, then such an use was lawful, and the defendants cannot be convicted upon the first count of the indictment. *Answer :* We refuse this proposition. We leave it to you to determine whether their use was reasonable, and whether or not by its use they unreasonably interfered with the use of the road by the public. [5]

"5. That under all the evidence in the case the defendants cannot be convicted upon the first count of the indictment. *Answer:* This is refused. [6] "

Verdict, "guilty as indicted."

A motion in arrest of judgment was overruled after argument. [2] Defendants were sentenced to pay a fine of one dollar and costs, and abate the nuisance within five days. Defendants appealed.

*Errors assigned* were (1) overruling the motion to quash the indictment; (2) overruling the motion in arrest of judgment; (3, 4) affirming the fifth and sixth points of the commonwealth, quoting the points and the answers; (5, 6) refusing the fourth and fifth points of the defendants, quoting the points and the answers.

*Rodney A. Mercur,* for appellant.—"It is not every obstruction irrespective of its character or purpose that is illegal, even although not sanctioned by any express legislative or municipal authority. On the contrary, the right of the public to the free and unobstructed use of the street or way is subject to reasonable and necessary limitations:" 2 Dillon, Mun. Corp., sec. 730; Macomber v. Nichols, 34 Mich. 212.

The right to partially obstruct a street does not appear to be limited to a case of strict necessity. It may extend to purposes of convenience or ornament, provided it does not unreasonably interfere with public travel: Allegheny v. Zimmerman, 95 Pa. 287; Com. v. Hauck, 103 Pa. 536; Piollet v. Simmers, 106 Pa. 109.

The use being lawful, to constitute an indictable offence it must also be charged that the traction engine was used in a careless and negligent manner: Buchanan v. Lossee, 51 N. Y. 476; Wood on Nuisances, sec. 151; 2 Dillon, Mun. Corp., sec. 684; Wabash etc. R. R. v. Farver, 111 Ind. 195; Elliott on Roads and Streets, 634; Bennett v. Lovell, 12 R. I. 166.

Even were such use of the highway a nuisance at common law, it has been legalized in this state: Act of June 30, 1885, P. L. 251: Elliott on Roads and Streets, 484; Cooley on Torts, 615; North Vernon v. Voegler, 103 Ind. 314.

There was no evidence that the loads hauled were excessive and unwarrantable, that injury to the roadway or bridges had

been done, and if their passage had such an effect as the commonwealth alleged, it was their duty to prove it, and failing to do so, it was the duty of the court below to instruct the jury to acquit the defendants, upon the second count.

*John C. Ingham* and *John W. Codding,* district attorney, *D'A. Overton* with them, for appellee.—It is not claimed that the simple movement of a traction engine from one point to another is a nuisance. The contention is that running a traction engine back and forth several times a day, over the same piece of road, being almost continuously on some part of it, and thereby frightening horses, endangering the safety of travelers and obstructing and hindering travel, is a nuisance.

At common law any act or obstruction which unnecessarily incommodes or impedes the lawful use of the highway by the public, is a nuisance: Angell on Highways, sec. 223; 4 Black. Comm. 167; Com. v. Milliman, 13 S. & R. 404; 2 Wharton, Cr. Law, sec. 2415.

Whether the acts complained of constituted a nuisance under all the circumstances in the case is a question for the jury: Allegheny v. Zimmerman, 95 Pa. 287; 2 Smith's Lead. Cas. (9th ed.) 1417; 9 Amer. & Eng. Ency. of Law, 412.

Traction engines on the highway, which by their noise, smoke, steam and appearance frighten horses, are a nuisance: 16 Amer. & Eng. Ency. of Law, 961; Cooley on Torts, 617; North Manheim v. Arnold, 119 Pa. 380.

The drawing back and forth several times a day over the same piece of road of great, extraordinary and unusual loads, is a nuisance: Angell on Highways, sec. 223; 16 Amer. & Eng. Ency. of Law, 964; McCormick v. Washington, 112 Pa. 196.

The act of June 30, 1885, fully recognizes the great danger of moving machinery propelled by steam over a public highway. It certainly does not provide for the constant running of such machinery. The extension of a statute by implication is confined to its strictly necessary incidence and logical consequences: Endlich on Statutes, sec. 422; see 1 Addison on Torts, 269; Crosland v. Pottsville, 126 Pa. 522.

PER CURIAM, March 28, 1892:

The defendants were convicted in the court below of main-

taining a nuisance. They now allege that the indictment does not charge an indictable offence. The first count thereof sets forth that the defendants " set up, established, maintained, kept up and continued, an obstruction in said public road and common highway aforesaid, leading from Rummerfield, in Standing Stone township, up the Rummerfield creek by Philip Grace's, towards Herrickville, by running back and forth several times a day, over said highway, an engine propelled by steam, commonly known as a traction engine, which, by its smoke, steam, noise and appearance, frightens the horses driven over said road, or common highway, and endangers the safety and lives of people using said road in an ordinary manner, and obstructs and hinders travel thereon, whereby the public road and common highway aforesaid was then and there obstructed and straitened so that the citizens of said commonwealth could not then and there go, return, pass, and repass, ride and labor, on foot and on horseback, with their horses, coaches, carts, carriages and wagons, in, upon, through and along said public road and common highway, as they ought and were wont and accustomed to do, without great danger of their lives, and also their goods, to the great damage and common nuisance of all citizens of said commonwealth of Pennsylvania, going, returning, passing and repassing, riding and laboring with horses, coaches, carts, carriages, wagons, on foot and on horseback, upon, through, and along said public road and common highway, contrary to the form of the act of general assembly, in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania."

Upon the trial below, it appears that the defendants had been operating a stone quarry for several years. This quarry is situated on a public road about three miles from Rummerfield station. It is a narrow road with four bridges between the stone quarry and the station. For several years the defendants hauled the stone from the quarry in the ordinary manner by horses. Sometime during the year 1891, Charles A. Allen, one of the defendants, procured a traction engine, and put it on the road for the purpose of drawing heavier loads of stone. Behind the engine they hitched two wagons, one behind the other, making a train from fifty to fifty-five feet long, and, when loaded, weighing from thirteen to fourteen tons. They

made two trips a day from the quarry to the station. It took from an hour to an hour and a half to go over the road one way. There was evidence that the train would sometimes stop for half an hour to get up steam. The steam would blow off frequently and make a good deal of noise ; that it hindered and obstructed travel over the road; that people took other roads several miles out of their way to avoid it; that women and children accustomed to drive to the station for different purposes were afraid to do so ; that farmers who had contracted to deliver produce to Rummerfield refused to do so because of the obstruction, and cars partly loaded had to be unloaded on that account; that parties at the station and on the road had been hindered and delayed, sometimes for half an hour or more, waiting for this train to get out of the way ; that persons who had met it in the road had been obliged to unhitch their horses and go off behind schoolhouses, into the woods and lanes, and wait until it had gone by.

We are not prepared to say that the indictment does not set forth a public nuisance, and that the jury were not justified in finding in the evidence the existence of such nuisance. The running of a traction engine over a public highway upon a single occasion would not constitute a public nuisance. That may be necessary to remove it from one location to another, as in the case of a steam-threshing machine, which is at certain seasons removed from one farm to another for the purpose of threshing out the farmer's crops. Indeed, the act of June 30, 1885, seems to recognize such necessity, and prescribes the conditions and manner in which machinery propelled by steam may be moved over a public road or highway. This, however, we regard as restrictive legislation. It was not intended to license the unrestricted use of steam upon the public highways of the commonwealth. While a man may have a right under this act of assembly to run a traction engine over a public road for a necessary purpose, by complying with the terms of the act, yet, if he uses that privilege in an unreasonable and in an unusual way, it may constitute a public nuisance. At common law, any obstruction which unnecessarily incommodes or impedes the lawful use of a highway by the public, is a nuisance: Angell on Highways, 255, § 223 ; 4 Bl. Com. 167 ; Com. v. Milliman, 13 S. & R. 404. Any such obstruction of a public

road as materially interferes with the public convenience, is indictable as a nuisance : 2 Wh. Cr. L. 15. A man may lawfully use a public highway in the transaction of his legitimate business either for travel or for transportation, but it is common law and common sense that he must use it in a reasonable manner, and not interfere with its reasonable use by other citizens. And whether a particular use is an unreasonable use and a nuisance, is a question of fact to be submitted to a jury : Allegheny v. Zimmerman, 95 Pa. 287. While each citizen is protected in the enjoyment of his own rights, he must so exercise them as not to interfere with the rights of others. We can understand that it may be sometimes necessary to move a traction engine from one place to another, in the reasonable pursuit of a lawful business. It is quite another matter to occupy a particular road continuously for such purpose, to the inconvenience of the public, and peril to persons using such road. The jury have found such continuous user to be a nuisance, and we cannot say such finding was not justified by the evidence. In the American and English Encyclopædia of Law, vol. 16, page 962, the learned editor mentions, among other indictable nuisances : "The use on a highway of a traction steam-engine, which, by its noise and appearance, frightens horses and makes the highway dangerous to persons riding or driving."

Aside from this, it was alleged on the part of the commonwealth that this traction engine, with the unusual load that it drew, injured the highway, and endangered the safety of the bridges. As a general rule, highways and bridges are constructed for ordinary use in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed, or by the passing of a very large and unusual weight. A township is not bound to do more than to so construct its bridges as to protect the public against injury by a reasonable, proper and probable use thereof, in view of the surrounding circumstances, such as the extent, kind and nature of the travel and business over them. There was evidence upon the trial below that the bridges on this road were built only for the usual and ordinary loads drawn over them, and that such loads were not more than one third or one fourth of the weight of the loads drawn by this traction engine.

An examination of the respective specifications fails to disclose error. The case was submitted to the jury under proper instructions as to the law.

Judgment affirmed.