# Downey v. The State.

*Indictment for Gaming.*

1.  *Gaming; playing cards in outhouse; erroneous definition.*—Where, on a trial under an indictment for playing cards at an "outhouse where people resort," there is evidence tending to show that only on one occasion did persons go to the house in question for the purpose of playing cards or for any other purpose, and that they then went there with and on the invitation of the owner, who, at all times, kept the house locked and carried the key, and that no one was present except the participants in the game of cards then played—being the game in which the defendant played—it is error to instruct the jury that an "outhouse is one where persons may go for the purpose of playing cards, whether they go there once or a dozen times ;" and such erroneous definition is not modified and made correct by a subsequent statement of the court to the jury that "If they may resort there and do resort there, then it is an outhouse within the meaning of the statute."

2.  *Same; same.*—On a prosecution for playing cards in an outhouse where people resort, a charge which instructs the jury "that an unoccupied storehouse, if resorted to by persons for the purpose of playing cards, comes within the provisions of the statute against playing cards at any outhouse where people resort, and it would not be material whether such house was kept locked by the owner," asserts a correct proposition, and is not open to the objection that it declares that the fact that the house was kept locked is not admissible in evidence upon the question whether people resort there or not.

3.  *Same; same.*—In such a case, a charge which instructs the jury

[Downey v. The State.]

that if "the storehouse was kept constantly locked, and could not be entered without the key, and M. [the owner] kept the key, and did not allow people to go to the house to play cards," the house was not an outhouse within the meaning of the statute, is erroneous and properly refused, as invasive of the province of the jury.

4. *Same; same.*—In such a case, it was proper to refuse, as invasive of the province of the jury, a charge which instructs them, that if "the house was a storehouse which was kept locked and the owner kept the key, and no one could enter without breaking open the house or procuring the key with which to enter, and only three occasions are shown when the owner unlocked the door, and he and a party of friends played cards on three occasions, and there is no evidence of any other playing, this would not be an out-house within the meaning of the statute."

5. *Same; same.*—In such a case, a charge is properly refused as being invasive of the province of the jury, which instructs them that "If the house at which the cards were played was a vacant storehouse and under the control of M., and kept constantly locked, and he, M., carried the key and did not permit people to go there and play cards, and only went there on two or three occasions with a party of friends and engaged in a game of cards, this did not make said house an out-house within the statute against gaming, and the defendant could not, on such evidence, be convicted of playing cards at an out-house."

Appeal from the City Court of Bridgeport.

Tried before the Hon. William L. Stephens.

The appellant was indicted, tried and convicted of playing cards in an "out-house, where people resort." The out-house was shown to be an old store-house. The tendencies of the evidence for the purpose of an understanding of the questions presented on the present appeal are sufficiently stated in the opinion.

The court, in its general charge, instructed them as follows: "An out-house, gentlemen, where people resort, is one where parties may go for the purpose of playing cards, whether they go there once or a dozen times. If they may resort there and do resort there, then it is an out-house within the meaning of the statute; and it is so if the house is kept locked." The defendant duly excepted to this portion of the court's general charge, and also excepted to the court's giving at the request of the State, the following charge: "An unoccupied store-house, if resorted to by persons for the purpose of playing cards, comes within the provisions of the statute against playing cards at any out-house

[Downey v. The State.]

where people resort, and it would not be material whether such house was kept locked by the owner." Thereupon the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "If the evidence shows that the store-house was kept constantly locked and could not be entered without the key, and that J. S. Martin [the owner] kept the key and did not allow the people to go to the house to play cards, and this is the evidence as the jury finds it, then the house was not an out-house within the statute, and the defendant should be acquitted." (2.) "An out-house where people resort for playing cards, if the testimony shows the house was a store-house which was kept locked and the owner kept the key, and no one could enter without breaking open the house or procuring the key with which to enter, and only three occasions are shown when the owner unlocked the door and he and a party of friends played cards on three occasions, and there is no evidence of any other playing, this would not be an out-house within the meaning of the statute." (3.) "No 'house' can be an out-house where people resort, if it is kept locked and people not allowed to enter except by invitation of the owner, and he testifies that he has not permitted people to go there and play cards except on one occasion, if the jury believe this evidence to be true, or if they have a reasonable doubt of its truth." (4.) "In order to constitute an 'out-house' within the meaning of the statute against gaming, the house must be such an one as people may, if they choose, resort to to play cards. If the house is kept constantly locked and people not allowed to resort there to play cards, then it is not an out-house within the statute against gaming." (5.) "If the house at which the cards were played was a vacant store-house and under the control of J. S. Martin and kept constantly locked, and he (Martin) carried the key and did not permit people to go there and play cards, and only went there on two or three occasions with a party of friends and engaged in a game of cards, this did not make said house an out-house within the statute against gaming, and the defendant could not, on such evidence, be convicted of playing cards at an out-house." (6.) "If the jury believe that J. S. Martin and Joe

[Downey v. The State.]

Downey have told the truth as to the number of times that they played cards at the store-house, their verdict should be for the defendant."

J. E. Brown, for appellant.—The court in his oral charge to the jury defined an out-house where people resort as "one where parties may go for the purpose of playing cards, whether they go once or a dozen times." This is evidently erroneous, for if this were true, then all playing at an out-house would be prohibited, the same as at the different public places mentioned in the statute. To play cards at an out-house, the parties must go there once as a matter of necessity, and the words, "where people resort" is a useless addition to the statute, without regard to the evil example on others which it is the design of the statute to prevent, rather than the actual playing. All words of a statute must have some force assigned them if possible.—*Cain v. State*, 30 Ala. 534; *Downey v. State*, 90 Ala. 646; *Brooks v. Mobile*, 31 Ala. 227; *Spivey v. State*, 26 Ala. 101. And in *Sale v. State*, 68 Ala. 534, it is said: "We should give to each clause of the statute some operation, if we can." Nor is this error cured by the subsequent use of the word "resort" in the oral charge. The court had already defined "resort" to mean going "one time," and there was nothing in that part of the charge calculated in the remotest degree to remove the error laid down in the first part. The error here is the same as that pointed out in *Cain's Case*, 30 Ala. 534, where it is expressly decided that playing one time at an out-house is not within the prohibition of the statute.—*Downey v. State*, 90 Ala. 646.

William C. Fitts, Attorney-General, for the State, cited *Pickens v. State*, 100 Ala. 127; *Downey v. State*, 90 Ala. 644; *Wheelock v. State*, 15 Texas, 253.

HEAD, J.—By statute, card playing at an "out-house where people resort" is a misdemeanor. The defendent was tried for this offense.

In *Downey v. State*, 90 Ala. 644, we defined, as nearly as practicable, "an out-house where people resort," as used in this statute, and now refer to what is there said.

The trial court instructed the jury that "it is one where parties may go for the purpose of playing cards,

[Downey v. The State.]

whether they go there once or a dozen times." There was evidence tending to show that only on one occasion did parties go there for the purpose of playing cards (or for any other purpose), and that they then went there with, and on the invitation of, the owner, who at all times kept the house locked and carried the key, and that no one was present except the participants in the game of cards which was then played—being the game at which the defendent played. If this version of the evidence was the true one, the defendant was not guilty under the authority *supra*. The charge authorized a conviction upon such a state of case, and was erroneous. This erroneous definition was not modified by the subsequent statement of the court to the jury that, "If they may resort there and do resort there, then it is an outhouse within the meaning of the statute." The jury were, notwithstanding this statement, still under instruction that going there one time for the purpose of playing cards, made it a house where people resort.

The written charge given at the request of the State was proper. We do not understand it to declare that the fact that the house was kept locked is not admissible in evidence upon the question whether people resorted there or not.

We think under the evidence in this case it was for the jury to determine whether the house in question was one where people resort, and that charges 1, 2 and 5 requested by defendant invaded the province of the jury.

The third and sixth charges requested by defendant are of a kind often held improper as being argumentative, or giving undue prominence to particular testimony.

The fourth charge might properly have been refused, though we do not say the oral explanation of it given by the court was unobjectionable. They will, probably, not arise again in the same shape.

Reversed and remanded. Let the defendant remain in custody until discharged by law.