COVINGTON COUNTY *v.* LORIN COLLINS.

[45 South., 854, 14 L. R. A. (N. S.), 1087.]

1. HIGHWAYS.  *Use.  Nuisance.  Question of law.  Board of supervisors.*
   The board of supervisors may not conclusively adjudge the operation of a traction engine on a highway to be a nuisance, the same involving a question of law, but its judgment will be strongly persuasive since it has full jurisdiction over public roads.

2. SAME.  *Objections to use.  Right of individual.*
   Highways belong in common to the public, and any one person may object to their improper use.

3. SAME.  *Traction engine.  Case.*
   The use of a highway by a large and heavy traction engine, propelled by steam and employed by its owner in hauling wagons between his mills, two trips of two and one-half miles each being made daily, is an unusual, unreasonable and unlawful use of the highway and may be prevented by the board of supervisors.

FROM the chancery court of Covington county.
HON. THADDEUS A. WOOD, Chancellor.
Covington County, appellant, was complainant in the court

below; Collins, appellee, was defendant there. From a decree dissolving an injunction and dismissing the bill complainant appealed to the supreme court.

The county filed its bill in chancery against Collins and "all other persons who are running or attempting to run a traction engine on the public county highways," to enjoin them from using a traction engine on the public road in the county in violation of an order passed by the board of supervisors declaring the use of the county highways by traction engines to be improper and unlawful, and prohibiting such use under penalty. The bill, in addition to reciting the passage of such order, further set forth that the appellee, Collins, was operating a traction engine upon the county highways to the detriment of the roads, which were thereby torn up and put out of repair, and of travel, by frightening teams and obstructing persons in general on the roads. The bill further charged, that because of the appearance of the engine, operated by steam, accompanied with great noise, and of the danger from steam, smoke and sparks emitted as it passed habitations on the way, it was a nuisance; and that may citizens of the county had complained of its use of the county highways, but that the appellee, Collins, though requested by the proper representative of the county had disregarded the orders of its board of supervisors and declined to cease operating the engine.

The appellee, Collins, being temporarily enjoined from further use of the engine on the highways of the county, made answer to the bill denying the right of the county to restrain him or any other person from properly using the highways for the operation of the traction engine, that any danger to the public or harm to the road would result therefrom, and that the public in general were hindered in travelling on the highways because of the operation of the engine. The answer admitted that at times steam and smoke escaped from the engine, and that there was some noise in its operation; and, further, that a few persons in the vicinity of Mount Olive requested defendant not to

run his traction engine on said road as it frightened them and their horses and mules, but averred that said persons represented a very small proportion of those who used said road constantly in the usual course of business and pleasure. The answer charged that many of the citizens of the county, living around and in the town of Mount Olive, who were in the habit of passing along the road every day had voluntarily signed a petition to the board of supervisors to allow appellee to continue the use of the county roads in the operation of his engine, and denied that the use of the engine constituted a nuisance as charged in the bill.

The cause was heard on motion to dissolve the injunction and on affidavits; the substance of the affidavit of the appellee, Collins, is stated in the opinion of the court.

*R. L. & E. L. Dent,* for appellant.

Code 1906, § 307, vests in the boards of supervisors of the various counties of our state full jurisdiction over roads, highways, ferries and bridges. And Code 1906, § 4397, authorizes the board of supervisors of any county to protect the highways and bridges thereon from any unusual or uncommon use where the same may be likely to injure or impair public traffic. The record discloses that the order of the board declaring the use of the county highways by traction engines to be a nuisance, was regularly passed, and hence is valid. *Jefferson Co.* v. *Arrighi,* 54 Miss., 668; *Paxton* v. *Baum,* 59 Miss., 531; *Seal* v. *Donnelly,* 60 Miss., 658; *Ex parte Fritz,* 86 Miss., 210, 38 South., 722.

If appellee used the highway occasionally, or if the passage of the traction engine were solely for the purpose of removing it once and for all time from one location to another, the proposition would be different. But appellee makes regular daily trips back and forth, often twice a day, with his engine and train of wagons to the constant hindrance of all other kinds of traffic upon the road.

As the board carefully considered the matter before passing the order, and as the board had full jurisdiction of the matter at the time, its action must be considered as *res adjudicata*. Appellee cannot collaterally attack the order. *Rotenberry* v. *Yalobusha Co.*, 67 Miss., 470, 7 South., 211; *Monroe Co.* v. *Strong*, 78 Miss., 565, 29 South., 530.

Highways are created for the usual and ordinanry use and travel of the general public in a reasonable and ordinanry manner; and if this traction engine should be allowed to be operated upon the public highway, it would greatly affect the public passage upon it; and appellee's use of it would be an encroachment on the general public's right of travel.

To assume that the operation of traction engines upon the. common highways of the county is now a reasonable use of the highways, is to assume that the highways will finally be legally taken for use almost solely by dummy lines and tramways. Code 1906, § 4412, requiring vehicles to keep to the right hand side in passing other vehicles, in public highways, has no reference to what an engineer of a locomotive must do in passing and repassing other parties; and therefore it was never contemplated that a heavy steam engine should be allowed to be run upon the public roads of the county. *Commonwealth* v. *Allen*, 16 L. R. A., 148.

*R. V. Fletcher*, attorney-general, on the same side.

Code 1906, § 4397, authorizes the board of supervisors to protect the public roads from any unusual or uncommon use where the same is likely to impair the usefulness of the roads as a public highway. It is clear from this statute that the board in this case had the authority to determine that a train of cars, run habitually over a highway, is such an uncommon use as would, if continued, impair the usefulness of the highway.

Appellee did not use the traction engine upon the highway occasionally or at long intervals; but, instead, he made regular daily trips on the highway with it. He practically changed the

highway from its ordinary use into a tramway over which his train of wagons were constantly operated. The evidence shows that sometimes he made as many as two round trips a day with the engine, and it is undisputed that the horses of travellers, farmers and others, were oftentimes frightened in passing it on the road; drivers of terms were often forced to leave the narrow road in order to pass the unwieldy piece of machinery; and sometimes the engine would get out of repair and so obstruct the road as to render travel for the time impossible. Highways are for the use of teams and pedestrians, not for the passage of trains propelled by steam. The use to which appellee put the highway was improper. *Commonwealth* v. *Allen,* 16 L. R. A., 148.

It may be said by appellee that there is evidence to show that the engine was not a nuisance. If this be granted, the utmost that can be said is that the evidence is conflicting, and that the chancellor therefore should not have overthrown the order of the board of supervisors. This is not a case where the chancellor's finding of fact is at all important, since the evidence shows that the board of supervisors did not act arbitrarily but had some color of right.

*T. S. Howell,* for appellee.

It must be admitted that a traction engine which is operated upon a public road tends to frighten some horses and other beasts of burden, especially at first sight. But so do bicycles, electric cars, automobiles and eight-wheeled lumber wagons. Because some animals may be frightened by the passage of a traction engine along the highway should not justify a board of supervisors in passing an order absolutely prohibiting its use upon the highway. New inventions and new means of locomotion are generally accepted slowly by those who do not keep abreast with the march of civilization.

It will be noted that there are no bridges on the road over which the engine and wagons pass; and the evidence of the road overseer of the road in question is that the road was improved by the rolling of the engine over it.

A highway is intended for public use, and a person riding or driving a horse has no rights on the highway superior to a person riding a bicycle. 28 L. R. A., 608; 58 Minn., 555; 60 N. W. Rep., 545. The same rule applies as to automobiles and other formerly unusual vehicles. *Taylor* v. *Union Traction Co.*, 184 Pa., 465, 47 L. R. A., 289; *Christy* v. *Elliott*, 216 Ill., 31, 1 L. R. A. (N. S.), 215; *Indiana Springs Co.* v. *Brown*, 1 L. R. A. (N. S.), 215.

A traction engine in not *per se* a nuisance Whether it may be classed as a nuisance is dependent upon how it is operated. 54 Miss., 540; 1 Thompson on Neg., § 1312; *Macomber* v. *Nichols*, 34 Mich., 212, 22 Am. Rep., 522.

The county board of supervisors evidently miscontrued its authority under Code 1906, § 4397. Its order did not prescribe what should be an unusual or uncommon load or weight to be carried over the roads or bridges, or what should be an uncommon use of the public roads; but instead simply provided that no engine propelled by steam, commonly known as a traction engine, should be permitted to be operated upon any of the highways of the county. The order did not attempt merely to regulate the running of traction engines over the roads; it absolutely forbade their use on the roads, regardless of their size or weight or appearance. The operation of traction engines, like the use of bicycles and automobiles, is subject to reasonable regulation; but these vehicles cannot be absolutely prohibited from the highway in the entire absence of wrongful use of the highways.

Certainly it was never intended or contemplated by the legislature that the orders and actions of board of supervisors of a county should be absolutely final, and that no rights could result from appeal from such orders.

MAYES, J., delivered the opinion of the court.

According to the testimony of Collins himself, it is shown that the traction engine was operating over a public road leading

to his two mills and that it made one or two trips a day. The time required to make these trips was an average of fifty-five minutes going and coming, and the distance it traveled over the highway was about two and one-half miles. One trip would be made in the morning and one in the afternoon. The lumber hauled by the traction engine was hauled by means of wagons coupled to the engine and to each other, and on these wagons the lumber was loaded, and the amount carried on each wagon would average about one thousand eight hundred to two thousand feet. To this traction engine were coupled from two to four wagons. It is not shown by any testimony that the running of this traction engine in this way damaged the road itself, but actual damage to the road is not the only question in this case to be considered. There is a great deal of other testimony—some of the witnesses testifying that they were inconvenienced by the running of this traction engine; others testifying that the road was made dangerous for travelers by reason of the fact that their teams were frightened, and that they would have to take by-paths to pass around this engine when it was approaching, etc. It was the judgment of the board of supervisors of the county that the running of this traction engine was detrimental to the use of the road by the public, and that it constituted an obstruction to the highway, and was a nuisance, and they ordered it discontinued.

This is not a case of occasional use of the highway for the passage of this traction engine for the purpose of transporting it from one place to another; but the record shows that the road is being used for the purpose of running this traction engine between the two mills and hauling lumber. In 15 Am. & Eng. Encyc. of Law (2d ed.), p. 505, it is said that: "The use of the highway for the passage of an object or vehicle of an unusual character, and therefore calculated to frighten horses, is not in itself illegal, and it has accordingly been decided that the propulsion of objects by steam is not necessarily a nuisance. The question seems to be dependent to some extent upon the

frequency of the use of the highway in such manner, and also upon a particular form of a moving object." Many states have held that a bicyclist, or a person using an automobile, has as much right to the public road as a person using any other means of transportation; and it is argued by counsel for appellee Collins, that, inasmuch as the courts have so held, a person may use a traction engine, just as he may use an automobile or a bicycle. We are not considering the rights one may have to run an automobile or a bicycle on a highway. We will determine that when the question comes up. The only question we have to consider in this case is whether or not one may make constant use of a public highway for the purpose of running a traction engine with from two to four wagons attached thereto, and whether or not this constitutes a lawful use.

Whether or not a particular use of a highway constitutes a nuisance is not, of course, determinable alone by the adjudication of the board of supervisors to that effect; but it is a question of law. But, since the board is vested with full jurisdiction in all matters appertaining to the public roads, its declaration upon this subject is very persuasive, and particularly when we consider it as applied to the case now under consideration. In our search of the authorities we have not found a single case, in the absence of a statute which gave the authority, which holds that the public highway may be continuously used for the purpose of running a traction engine in order to facilitate the business of a private individual. Many states have statutes upon this subject, and the very fact that it has been necessary to legislate along these lines shows that the continued use of a traction engine on the public highway is regarded with disfavor and looked upon as dangerous to the public in the use of the road. In Wisconsin under St. Wis. 1898, § 1347b, as amended by chapter 197, p. 304, Laws 1899, the owner or operator of a steam engine on any public highway in any town, etc., is required to signal and stop it when approached, within fifteen rods in either direction, by a team or person riding or driving any animal, and

to render all proper assistance to enable such team to pass in safety. In Maryland, by article 27, §§ 399, 400, of the Code of Public General Laws, it is required that every traction engine propelled by steam on any public road shall be accompanied by at least two men, whose duty it shall be to so conduct the engine as to cause as little harm as possible to horses on the road, and to render all reasonable assistance to persons driving, and to keep the engine stationary when a horse is alarmed. *Miller* v. *Addison,* 96 Md., 731, 54 Atl., 967; *Cudd* v. *Larson,* 117 Wis., 103, 93 N. W., 810. In Indiana, statutes have been enacted making the employment of automobiles on public highways a lawful use of the highway. See Acts Ind., 1905, p. 202, c. 123, and Burns' Ann. St. Supp. 1905, § 8703h. *McIntyre* v. *Orner,* 166 Ind., 57, 76 N. E., 750, 4 L. R. A. (N. S.), 1130, 117 Am. St. Rep., 363. In all the states where this has been the subject of legislation, the legislatures have made various provisions; some of them requiring at least two persons to precede the traction engine, etc. Whatever may be the holding of other states upon this subject where they have passed these statutes, the testimony in this case fully warranted the board of supervisors in declaring the continuous running of this traction engine on the public highways dangerous to travel and a nuisance, and such extraordinary use of the highway as to make it unlawful. We have no reference to the occasional use for the purpose of changing the location of the traction engine, if proper precautions are taken to avoid damage to others in this use of the highway.

It can make no difference how many petitioners living along this road sign the petition to permit the use of this traction engine on it. An unlawful use of the highway cannot be made lawful thereby. The question is: Is the continued running of this traction engine on this highway an unusual, unreasonable, and extraordinary use of the highway, and does it endanger the safety of those who have the right to travel upon it? If the use is unreasonable, unusual, and dangerous to safe travel, it is perfectly within the power of the board of supervisors to put a

stop to it as an obstruction and a public nuisance, if there be but one person along this road who objects to it. The right of one individual is as sacred in the eyes of the law as are those of the multitude. One person, or many persons, for reasons of their own, may be willing to submit to the dangers which may be entailed by the running of this traction engine and the impediment which it offers to safe travel along this highway; but this furnishes no reason why it should be imposed upon any individual who objects to it, if the use of the traction engine over the road is an unlawful use. The highway belongs in common to all the public, and to any one of the public; and any one of the public has the right to object to any but the proper use of that which is the common property of all. *Commonwealth* v. *Allen,* 148 Pa., 358, 23 Atl. 1115, 16 L. R. A., 148, 33 Am. St. Rep., 830.

The case of *Macomber* v. *Nichols,* 34 Mich., 212, 22 Am. Rep., 522, cited by counsel for appellee, is not in point. There was no question in that case as to the right of the public authority, vested with full jurisdiction over the public highways, to declare a particular extraordinary use of the highway an obstruction and a nuisance and to order its discontinuance. It was a private litigation to recover damage by one party against another. It that case the facts do not show that there was any continued use of a highway for the purpose of hauling over the road by the steam engine in question. On the other hand, the facts show that the engine in question was a threshing machine, moved from place to place only ocassionally, when it became necessary to go to another place. There was no continued use of the road for the purpose of running this engine; no hauling back and forth over the road, day by day, with wagons coupled to it. In short, in the *Macomber case, supra,* the business engaged in was not in the use of the road to make the threshing machine useful and valuable in the owner's business; but in using the machine, it became necessary to occasionally carry it over the public highway, and the court held that this could be

done. The case, *supra,* is quite distinct from that which is presented in this record, and an analysis of it shows that it is not an apt authority to sustain the proposition that the appellee here has the right to use the public highways continuously, for the purpose of running this traction engine over it. In this very opinion, it is said that the question always is one of reasonable use.

We cannot be unmindful of the fact that at this present day and time the country highways are used almost exclusively by teams drawn by animals. It may be that an automobile, or bicycle, has as much right to the road as these teams; but, as stated, we are not called upon to decide this question. We think the use of a traction engine upon this road at the place and under the circumstances was an unusual, unreasonable, and unlawful use to make of this road, and that the board of supervisors had the right to prevent it. The jurisdiction over the roads being confided to the board of supervisors both by the constitution and the statute, it will be a rare case, and one of manifest abuse of power, whenever this court holds that not to be an obstruction of the highway which the board of supervisors have officially declared to be an obstruction.

The injunction is reinstated, and the decree is *reversed* and cause *remanded.*