## White v. Kelly, Secretary of Revenue

*W. S. Stein,* for plaintiff.

*C. James Todaro,* for defendant.

McDEVITT, P. J., January 21, 1937.—By virtue of the authority vested in him by section 615 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, the Secretary of Revenue suspended the two-months-old permit of Arthur White as of September 28, 1936, for a period of 30 days, and by virtue of the authority vested in him by the Uniform Automobile Liability Security Act of May 15, 1933, P. L. 553, sec. 7, required proof of appellant's financial responsibility to the extent of $11,000 before the driving privilege would be restored.

Under the authority of section 616 of The Vehicle Code this appeal was taken to determine whether the suspension should be lifted only upon furnishing proof of appellant's financial responsibility.

The right of appeal is granted upon revocation or suspension, but the Uniform Automobile Liability Security Act had not been enacted when the appeal procedure was established.

For the purposes of this appeal, however, the court will assume that appellant has the right to appeal from the entire order of the Secretary of Revenue.

Appellant was tried on August 7, 1936, for violation of section 1002 of The Vehicle Code and fined. The Secretary of Revenue took judicial notice of this violation and cited White for a hearing.

On August 17, 1936, appellant was given a hearing before a representative of the Department of Revenue, and on September 28, 1936, the action upon which this appeal is based was taken by the Secretary of Revenue. On October 13, 1936, the appeal was taken, and on November 30, 1936, his hearing was held in this court.

Section 615 of The Vehicle Code reads:

"(a) The secretary may suspend the operating privilege . . . of any person . . . whenever the secretary finds upon sufficient evidence . . .

"(b) 2. That such person . . . has committed any violation of the motor vehicle laws of this Commonwealth."

Appellant admitted traveling at a rate of 60 miles an hour in Fairmount Park, this city.

The power conferred upon the secretary to revoke or suspend operating privileges is an administrative and not a judicial function and therefore not a violation of the Constitution: See Gima v. Hudson Coal Co., 310 Pa. 480; Commonwealth v. Funk, 323 Pa. 390; Locke's Appeal, 72 Pa. 491.

The hearing may be quasi-judicial, but the act of the secretary is administrative. The legislature therefore has not delegated judicial powers to the Secretary of Revenue.

Upon an appeal from a suspension or revocation of an operating privilege the court, under The Vehicle Code, sec. 616, is required "thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license or learner's permit under the provisions of this act."

Therefore the court hears the case de novo to determine anew whether the operator's license should be suspended.

While the original hearing for violation of the speed regulations was criminal, the proceedings before the secretary and the appeal to this court were civil. A criminal

prosecution does not bar a subsequent civil or administrative proceeding based upon the same set of facts, nor does a judgment rendered therein have any probative value in subsequent proceedings beyond the mere fact of its rendition: Wilson v. Wilson, 100 Pa. Superior Ct. 451. The plenary power of the legislature over the highways of the Commonwealth is of ancient origin and has been many times judicially affirmed: See O'Connor v. Pittsburgh, 18 Pa. 187; Commonwealth v. The Erie & North-East R. R. Co., 27 Pa. 339; The Southwark R. R. Co. v. The City of Philadelphia, 47 Pa. 314; Duquesne City v. Fincke, 269 Pa. 112; Foley et al. v. Beech Creek Extension R. R. Co., 283 Pa. 588; In re The Philadelphia & Trenton R. R. Co., 6 Whart. 25, 43.

The right to use a public highway for travel or in the transportation of merchandise is not unrestricted: See Commonwealth v. Dennison, 48 Pa. Superior Ct. 293. The Commonwealth, through the legislature, shall prescribe or dictate the conditions under which this limited right may be exercised: City of Allegheny v. Zimmerman, 95 Pa. 287; Commonwealth v. Doughty, 55 Pa. Superior Ct. 88.

This power, vested in the legislature, is not only based upon its right to control and regulate the use of the highways but is supported by the inherent police power of the State. Such power has been upheld by the United States Supreme Court: See Kane v. State of New Jersey, 242 U. S. 160, 167; Hendrick v. State of Maryland, 235 U. S. 610; Hess v. Pawloski, 274 U. S. 352, 356; Hodge Drive-It-Yourself Co. et al. v. Cincinnati et al., 284 U. S. 335.

Permission to operate a motor vehicle upon the highways of the Commonwealth is not embraced within the term civil rights, nor is a license to do so a contract or a right of property in any legal or constitutional sense: Commonwealth v. Funk, supra. It is only a permit; its enjoyment depends upon its holder's compliance with the conditions prescribed by it and is always subject to such regulation and control as the State may see fit to enact.

The Automobile Liability Security Act gives the secretary full authority, in section 7, to require proof of financial responsibility in such cases as the one at bar. That the act was not to govern cases only where accidents had occurred is evidenced by the repeated reference to suspensions as well as revocations of licenses. It gives him wide discretionary powers and well should it under existing circumstances.

Motor vehicles are dangerous machines, and even when carefully operated their use is attended by serious dangers to persons and property. They attain great speed and power. The legislature must prescribe how and by whom such vehicles may be used on the people's highways. The protection and promotion of public safety is within the police power.

The fact that last year alone Philadelphia showed an increase of 13.5 percent in automobile fatalities while 131 other major cities showed an aggregate decrease is reason enough strictly to enforce regulations intended to preserve life and property. The court might even add to "preserve morals", but since it is generally agreed that we cannot improve morality by legislation we do punish immorality in that manner. So many ills can be traced to automobiles that strict adherence must be had to the regulations prescribed for their operation.

Last year a person was killed every 15 minutes or an average of 100 persons were killed per day in the United States by automobiles. In 15 years ending December 31, 1935, the total deaths from automobiles were 388,936. In all the wars this country has engaged in we have lost only 244,357 persons in 160 years.

Thus, to sum it up in a nutshell, the Secretary of Revenue has been vested with authority by the legislature to revoke or suspend operating privileges for certain causes, among them being any violation of the motor vehicle laws of this Commonwealth.

The power to revoke or suspend or even reprimand has

been made discretionary with the secretary by the legislature. But once he has suspended or revoked an operating privilege it becomes mandatory for him to require proof of financial responsibility before reissuing or renewing the operating privilege.

Section 7 of the Automobile Liability Security Act reads:

"Whenever the secretary shall revoke or suspend an operator's license or shall suspend the operating privilege of a nonresident for violation of the laws regulating the operation of motor vehicles on the highways, as may now or hereafter be provided by law, such license or operating privilege shall not be renewed *unless* and *until* the former holder of the license or privilege has furnished proof of financial responsibility".

Appellant has violated The Vehicle Code; he has had a full fair hearing by the department and another by the court; he is guilty; he has not been wrongfully deprived of any inalienable or constitutional right; he has lost only a privilege.

For the reasons stated above the order of the Secretary of Revenue of September 28, 1936, is affirmed, and the operating privilege is to remain suspended until appellant furnishes proof of his financial responsibility to the extent of $11,000.